IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALBERT L. HOWARD,

                                                   OPINION AND
                                                   ORDER

                Petitioner,

                                                  11-cv-793-bbc

   v.

ROBERT HUMPHREYS, Warden
Kettle Moraine Correctional Institution,

                Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Petitioner Albert Howard, an inmate at the Kettle Moraine Correctional Institution, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The subject of his petition is his November 3, 2005 conviction in the Circuit Court for Dane County, Wisconsin for first degree sexual assault of a child, for which petitioner is serving a sentence of 20 years of initial confinement followed by 20 years of extended supervision. Petitioner has been allowed to proceed on the following claims: (1) the evidence adduced at trial was insufficient to support his conviction; (2) his trial counsel committed a number of errors that amounted to constitutionally ineffective assistance; and (3) his due process rights were violated when the state destroyed certain biological specimens.

The state concedes that petitioner has exhausted his available state court remedies and that his petition is timely. It asks this court to deny habeas relief on petitioner's first

1

two claims on the ground that the state courts' adjudication of these claims was consistent with and not contrary to controlling Supreme Court precedent, making habeas relief unavailable under 28 U.S.C. § 2254(d). With respect to the third claim, the state argues that petitioner failed to raise it properly in the state courts and therefore the claim is procedurally defaulted. Because I agree that petitioner cannot prevail on the merits of his first two claims and that his third claim is procedurally defaulted, I am denying the petition.

## I. BACKGROUND

### A. State Court Proceedings

On or about April 27, 2005, the State of Wisconsin charged petitioner with first-degree sexual assault of a child. The victim was seven years old at the time of the alleged assault, which was alleged to have occurred between February 1, 2005 and March 27, 2005. The assault was discovered when the child's mother took her to the doctor for a suspected vaginal infection that turned out to be gonorrhea, a sexually-transmitted disease. After the child disclosed that it was petitioner who assaulted her, petitioner was arrested. Testing of a biological sample provided by petitioner showed that he had gonorrhea.

During voir dire, a prospective juror, Meghan O., indicated that her sister had been a victim of sexual assault. Thereafter, the trial court questioned her individually as to whether she could be fair and impartial in light of this experience. When asked whether she thought what happened to her sister would affect her ability to give both sides a fair trial, she replied, "I would hope not, but that's my best answer." Tr. of Jury Selection, dkt.#31,

exh. 31, at 43:1-6.  Under further questioning, when asked whether she could decide the case based on the evidence and according to the law, she said, "Yes, actually.  Yes."  Id. at 44.19.  She further stated that she understood that what had happened to her sister was irrelevant to petitioner's case and that she believed she could give both sides a fair trial.  Id. at 44:20-45:1.  When pressed further by petitioner's lawyer about her ability to be fair, Meghan stated:

> I guess I will put it this way.  Knowing my background, I really hope that after all my years living with my dad, that I would be able to do that.  Do I think I would be thinking about my sister and, therefore, my daughter, yeah.  But do I think – could I separate it, I certainly would hope so.

Id. at 47:2-7.

Outside the presence of the jury, petitioner's lawyer moved to strike Meghan O. for cause.  The trial court denied the request.  It found no reason to think that Meghan was not being truthful in saying she could be fair and that there was no basis on which to presume she could not be impartial because of what had happened to her sister.  Id. at 50-51.  Counsel elected not to use a peremptory challenge to strike Meghan, and she was ultimately selected to serve on the jury.

At trial, the state presented a videotaped interview of A.S. in which she described having genital to genital sexual contact with a man she knew as "Little Al."  Testifying in court at the trial, A.S. identified petitioner as "Little Al."  In addition, the jury heard testimony from the victim's pediatrician, her mother, and the lab technicians who tested the samples collected from the victim and petitioner.  Petitioner testified in his own defense and denied assaulting A.S., although he admitted spending a lot of time with the family and

being at the home at times when the mother was sleeping. The jury returned a guilty verdict. Subsequently, petitioner was given a sentence of 20 years to be followed by 20 years of extended supervision.

Petitioner was appointed new counsel for postconviction proceedings and appeal. That lawyer filed a no-merit report, in which he identified sufficiency of the evidence and the propriety of the sentence as the only potential appealable issues, but concluded neither was meritorious. Petitioner filed several responses to the no-merit report in which he raised the following additional arguments: (1) the evidence presented at the preliminary hearing conflicted with the complaint and information concerning the approximate time of the offense, which deprived him of his due process right to notice; (2) use of the child's videotaped interview rather than the child's testimony in court deprived him his right to confrontation; (3) counsel provided ineffective representation in several respects; (4) the state violated the discovery order by withholding medical records; and (5) the evidence was insufficient to convict because the state failed to prove the specific date of the assault.

On October 23, 2008, the court of appeals issued an order summarily affirming petitioner's conviction. State v. Howard, 2006AP1903, slip op. (Wis. Ct. App. Oct. 23, 2008), at 2, attached to state's response to pet., dkt.#31, exh. L. After reviewing the briefs and the record, the court of appeals determined that the evidence was sufficient to support the verdict, the sentence imposed was valid and none of the issues identified by Howard had any arguable merit. On February 10, 2009, the Wisconsin Supreme Court denied his petition for review.

In December 2008, petitioner moved for postconviction DNA testing under Wis. Stat. § 974.07, seeking testing of the specimen collected from the victim to determine whether that specimen contained petitioner's DNA. In response, the state filed an affidavit by David Haselow, a Middleton Police Department detective, who averred that the victim's specimen had been collected, tested and destroyed by a non-government clinic and that the evidence had never been in the government's possession. Dkt. #32, exh.16. In February 2009, the circuit court denied the motion, explaining that petitioner had failed to show that the specimen was in the government's possession, as required by Wis. Stat. § 974.07(2)(b). Petitioner filed an appeal, but it was dismissed as untimely.

In May 2009, petitioner filed a postconviction motion under Wis. Stat. § 974.06, Wisconsin's collateral attack statute, asserting prosecutorial misconduct and ineffective assistance of counsel based on the use of the positive gonorrhea evidence at trial, which petitioner asserted was barred under Wisconsin's rape shield law. He also argued that his defense lawyer should have requested independent testing of the victim's miscellaneous culture specimen and that his appellate lawyer was ineffective for failing to raise the issue on appeal. Petitioner acknowledged that the culture specimen was destroyed by the clinic or private laboratory before his arrest, but asserted that he did not learn this until after his trial. Petitioner argued that, had his lawyer filed a motion for retesting of the culture sample, he would have learned that the sample had been destroyed and he could have moved to suppress the evidence on that basis.

The circuit court denied the motion, and the court of appeals affirmed on appeal.

The court of appeals determined that petitioner's claims were procedurally barred under State v. Escalona-Naranjo, 185 Wis. 2d 168, 517 N.W. 2d 157 (1994), because petitioner could have raised them in his responses to the no-merit report during the direct appeal. State v. Howard, 2009 AP 2591, slip op. (Wis. Ct. App. Oct. 13, 2010), dkt.#31, exh. Q. In a footnote, the court remarked that petitioner's trial lawyer could not "have provided ineffective assistance by failing to request additional tests on samples that, according to Howard's own allegations, had already been destroyed prior to his arrest." Id. at n.3.

In January 2011, petitioner moved again for retesting of both the victim's and his own biological specimens that showed that both he and the victim had gonorrhea. The circuit court denied his motion. On appeal, the court of appeals affirmed the circuit court, explaining that petitioner had not shown that it was reasonably probable that he would not have been prosecuted or convicted absent the test results showing that both petitioner and the victim had tested positive for gonorrhea. The court noted that "[t]he victim reported that Howard had genital to genital sexual contact with her, which was presented to the jury through a videotaped interview of the victim and the victim's in-court testimony." State v. Howard, 2011AP1981-CR, slip op. (Wis. Ct. App. Jan. 16, 2013), at 3, dkt. #31, exh. V. In light of that evidence, the court found that "it is not reasonably probable that, absent the biological evidence, Howard would not have been prosecuted or convicted." Id. It further noted that it appeared from the record the evidence was not in the possession of the government. Id.

In May 2013, petitioner moved for a new trial based on newly discovered evidence,

asserting that he had discovered after trial that the state had never had custody of the victim's biological sample and that the state had violated Brady v. Maryland, 373 U.S. 83 (1963), when it failed to inform him of the sample's destruction. Both the circuit and appellate courts rejected this claim, finding that it was procedurally barred because petitioner could have raised it in his May 2009 postconviction motion. Moreover, the appellate court noted that it had already rejected the premise that petitioner would not have been convicted had the biological material been excluded. State v. Howard, 2013AP2084-CR, slip op. (Wis. Ct. App. Mar. 12, 2015), at 6, dkt. #31, exh. BB.

### B. Proceedings in this Court

Petitioner filed his federal habeas corpus petition on November 28, 2011. In an order entered January 13, 2012, I allowed petitioner to proceed on his claims that the evidence was insufficient to support the jury's verdict and that his trial counsel had rendered ineffective assistance, but refused to allow him to proceed on claims related to certain evidentiary errors at trial. Dkt. #3. On March 2, 2012, I granted petitioner's motion for reconsideration, closing the case administratively and staying proceedings on the habeas petition while petitioner pursued DNA testing in the state courts and exhausted any constitutional claims he might have as a result of that testing. Dkt. #11. Eventually, on April 21, 2016, petitioner informed the court that he no longer had any constitutional claims left to be exhausted in the state courts and asked the court to reopen his case. Dkt. #23. On May 26, 2016, I issued an order reopening the case and allowing petitioner to proceed

on one additional claim, namely, that the state had violated his right to due process by destroying the biological specimens in bad faith.  Dkt. #24, at 4.

## OPINION

### I.  SUFFICIENCY OF THE EVIDENCE

Petitioner argues that the jury should have found the victim's testimony and videotaped interview unreliable because there was evidence that her mother bribed her to reveal the identity of the perpetrator and the interviewer asked the victim leading questions during the videotaped session.  In addition, he argues that there were reasons to question the accuracy of the lab results and that the state did not present evidence to show that he was alone with the child in her home during the time frame in which she said the assault occurred.  Pet. Br. in Supp., dkt. #32, at 2-7.

This court's review of the petition is governed by the Antiterrorism and Effective Death Penalty Act, which strictly limits the circumstances in which this court may grant habeas relief.  When, as here, a state court has ruled on a petitioner's claim, habeas relief is available only if the state court's adjudication of that claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The review starts with <u>Jackson v. Virginia</u>, 443 U.S. 307, 316 (1979), which is the

controlling United States Supreme Court case with respect to claims that the evidence was not sufficient to meet the level of proof demanded by the due process clause of the Fourteenth Amendment. In Jackson, the Court explained that after a properly-instructed jury has returned a verdict, the question before the court is not whether *it* would have found the evidence adduced at trial established guilt beyond a reasonable doubt, but whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original).

In analyzing and rejecting petitioner's challenge to the sufficiency of the evidence, the Wisconsin Court of Appeals wrote:

> The evidence showed that Howard often stayed with the victim's family at the time of the assault and was often alone with the victim and her siblings. The assault was discovered when the child's mother observed the child's vaginal infection on March 28, 2005. An examining physician treated her for the infection and observed inflammation around the victim's vagina that the physician ascribed to chafing and friction. Lab results showed a positive test for gonorrhea. The jury viewed a videotaped interview the victim subsequently gave in which she described having genital to genital contact with a man she knew as "little Al." In court she identified Howard as that man. The State also introduced evidence that Howard tested positive for gonorrhea. We review a guilty verdict by examining whether the jury could, acting reasonably, be convinced beyond reasonable doubt by the evidence which it had a right to believe and accept as true. *State v. Hamilton*, 120 Wis. 2d 532, 540-41, 356 N.W. 2d 169, [173-74] (1984). Here, the jury had the right to believe the victim's statements and testimony, and the evidence supporting it. If believed, that evidence allowed a finding of guilt beyond a reasonable doubt, and it would be frivolous to argue otherwise.

Slip op., Oct. 23, 2008, Dkt. #31, exh. L, at 2.

Although the state appellate court did not cite Jackson, the case it cited, State v.

Hamilton, 120 Wis. 2d 532, 540-41, 356 N.W.2d 169, 173 (1984), correctly recites the Jackson standard. Hamilton, 120 Wis. 2d at 154-41, 356 N.W. 2d at 173 ("The test is not whether this court or any member is convinced of the guilt of the defendant beyond a reasonable doubt but whether this court can conclude that a trier of facts could, acting reasonably, be convinced to the required degree of certitude by the evidence which it had a right to believe and accept as true. On review we view the evidence in the light most favorable to sustaining the conviction."). Thus, the state court's decision was not "contrary to" controlling Supreme Court precedent, meaning that the only question for this court is whether the state court "unreasonably applied" Jackson when it found the evidence sufficient to support the jury's verdict.

It is not easy to show that a state court has acted unreasonably in applying a flexible standard like that described in Jackson. To be entitled to habeas relief under § 2254(d), petitioner must establish that the appellate court's determination was "objectively unreasonable," not simply erroneous and incorrect. Yarborough v. Alvarado, 531 U.S. 652, 665 (2004). Where, as here, the relevant legal rule is not specific but requires a "substantial element of judgment," the range of reasonableness is broad. Id.

Applying this restrictive lens to the court of appeals' decision, I find that when the court rejected petitioner's challenge to the sufficiency of the evidence, its plication of the rule in Jackson was reasonable. The court of appeals discussed the substantial evidence against petitioner and explained why it was sufficient to support his conviction. Although petitioner marshals a number of arguments to support its position that the jury should have rejected

that evidence, it was up to the jury to consider whether the evidence was reliable and sufficient to establish petitioner's guilt.  At trial, petitioner's lawyer directed the jury's attention to the various weaknesses in the state's case, but failed to persuade the jury.  I agree with the court of appeals that, viewing the evidence in the light most favorable to the prosecution, a rational juror could find petitioner guilty beyond a reasonable doubt.  Accordingly, petitioner is not entitled to habeas relief on his sufficiency-of-the-evidence claim.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner asserts that his trial counsel committed a number of errors that amounted to constitutionally ineffective assistance.  Specifically, petitioner contends that his trial lawyer was ineffective for failing to  (1) investigate medical evidence; (2) consult with or call a medical expert to challenge the biological evidence introduced at trial; (3) use a peremptory strike to remove a biased juror; (4) file a motion to challenge the evidence relating to the time frame of the crime; (5) object to the state's motion *in limine* to preclude the defense from introducing evidence that a registered "sex offender" lived near the victim; and (6) object to improper statements in the prosecutor's closing remarks.  Br. in Supp., dkt. #32.

Before addressing the substance of these claims, I note that petitioner alleged a slightly different set of errors in his original petition.  The state has not objected to the grounds advanced in petitioner's brief and concedes that petitioner fairly presented all of these claims to the state courts.  Accordingly, I will deem the list of errors identified in

petitioner's brief to be the claims of ineffective assistance on which he is proceeding. To the extent that he identified different errors in his initial petition that he has not advanced in his supporting brief, I deem them to be abandoned. Duncan v. State of Wisconsin Department of Health and Family Services, 166 F.3d 930, 934 (7th Cir. 1999) (arguments that party fails to develop in its brief in any meaningful manner will be deemed waived or abandoned).

To make out a claim of ineffective assistance of counsel, a defendant must show (1) that his trial counsel's performance fell below an objective standard of reasonableness; and (2) that he was prejudiced by counsel's errors. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A defendant faces a significant hurdle in overcoming Strickland's high bar, for a court evaluating counsel's effectiveness post-trial must defer to counsel's reasonable judgments and avoid second-guessing. Harrington v. Richter, 562 U.S. 86, 105 (2011).

When reviewing a claim of ineffective assistance of counsel asserted by a state prisoner in a habeas petition to which § 2254(d) applies, as it does in this case, federal courts must be even more deferential. That is because § 2254(d) requires courts to defer to reasonable state court applications of federal law, and Strickland requires courts to defer to reasonable actions of counsel. Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (internal

citations and quotations omitted).  As the court stated in <u>Knowles</u>:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

<u>Id</u>. at 123 (internal quotations and citations omitted).  Because of this "double deference," "only a clear error in applying <u>Strickland</u> would support a writ of habeas corpus." <u>Holman v. Gilmore</u>, 126 F.3d 876, 882 (7th Cir. 1997).  So long as the Wisconsin Court of Appeals "t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions," <u>Mendiola v. Schomig</u>, 224 F.3d 589, 591 (7th Cir. 2000), this court must deny the writ.  I will address each of the alleged errors separately.

## A. <u>Failure to Investigate Medical Evidence</u>

Petitioner argues that his trial lawyer "failed to conduct an adequate pretrial investigation" concerning the state's medical evidence.  According to petitioner, his lawyer should have sought additional testing of the victim's test results showing that she had gonorrhea because the tests were unreliable.  Petitioner first raised this claim in the state courts during his 2009 collateral appeal under Wis. Stat. § 974.06.  Although the state appellate court found the claim procedurally barred because petitioner could have raised it during the no-merit proceedings, it noted as an aside that counsel could not have provided ineffective assistance by failing to request additional tests on samples that, according to Howard's own allegations, had already been destroyed prior to his arrest.

The Wisconsin Court of Appeals's determination that petitioner's claim was barred under a state procedural rule constitutes a procedural default that ordinarily bars this court from entertaining the merits of the claim. Kaczmarek v. Rednour, 627 F.3d 586, 591-92 (7th Cir. 2010). However, "[p]rocedural default is considered an affirmative defense that the State must raise and preserve to avoid waiver." Id. The state has not asserted procedural default in its answer or in its brief. Accordingly, I find that the state has waived it. Bonner v. DeRobertis, 798 F.2d 1062, 1066 & n. 3 (7th Cir. 1986) (state implicitly waived procedural default defense by addressing merits of claim and not arguing procedural default in district court or on appeal); Buggs v. United States, 153 F.3d 439, 444 (7th Cir. 1998) (government waived procedural default defense where it did not argue that petitioner procedurally defaulted claim and instead argued that the claim was meritless).

Regardless of the state's waiver, petitioner's claim has no merit. Petitioner does not explain how additional testing could have been performed on samples that were already disposed of by the time counsel was appointed. Further, he provides no evidence to support his argument that the testing of the samples performed by the private laboratories was unreliable. To the extent that petitioner suggests that his lawyer would have discovered that the samples had been destroyed had he made such a request, which in turn would have led to the court's exclusion of the test results at trial, petitioner cites no authority to support that assertion. As his own attachments show, the samples were never in the state's possession, so the court would have had no basis to find bad faith on the part of the state to warrant suppressing the test results. In short, petitioner cannot show that the outcome

of the trial would have been different had his lawyer filed a motion to test the biological samples. Accordingly, his Strickland claim on this ground fails.

## B. Failure to Consult a Medical Expert

Petitioner argues that his lawyer should have consulted a medical expert who could have established that the medical evidence presented at trial "had a myriad of problems affecting its reliability." Br. in Supp., dkt. #32, at 15. Petitioner raised this claim in his response to the no-merit report filed by his appellate lawyer. He argued that an expert could have testified that the gonorrhea tests performed on the biological samples obtained from the victim were not reliable without certain follow-up tests. The court of appeals rejected this claim as unsupported, explaining:

> Howard makes no showing other than providing the last name of his alleged expert. He also makes no showing that his alleged expert was a qualified witness, or that she was willing to provide the opinion he attributes to her. Without more, we cannot determine that failure to call an expert witness provides meritorious grounds to challenge trial counsel's performance.

Slip op., Oct. 23, 2008, dkt. #31, exh. L, at 5.

In his reply brief in support of his habeas petition, petitioner acknowledges that he has yet to find a medical expert to support this claim. Dkt. #42, at 8-9. Nothing in the record suggests that his lawyer would have been more successful. Absent actual evidence to show the existence of an expert who would have testified that the test results were unreliable, there is no basis on which to find that counsel was ineffective for not calling one. The court of appeals reasonably rejected this aspect of petitioner's Strickland claim.

## C. <u>Failure to Remove Juror</u>

Petitioner contends that his trial lawyer was ineffective for failing to use one of his five peremptory strikes to strike a prospective juror, Meghan O., who testified that her sister was once the child victim of sexual assault. Although Meghan stated that she could set aside what happened to her sister many years ago and decide the case fairly, petitioner's lawyer moved to strike her for cause. After that motion was denied by the trial court, petitioner's lawyer did not use one of the peremptory strikes to remove her.

There is no constitutional right to a peremptory challenge. <u>Jimenez v. City of Chicago</u>, 732 F.3d 710, 715–16 (7th Cir. 2013). "Rather, peremptory challenges are one time-honored means to protect the constitutional right to an impartial jury . . . [A] possible error in administering peremptory challenges that did not deny an impartial jury does not warrant a new trial." <u>Id</u>. Thus, petitioner must show that he was denied an impartial jury.

The state trial and appellate courts determined that Meghan O. was not biased. I must review those determinations deferentially. <u>Sumner v. Mata</u>, 449 U.S. 539, 546–47 (1981). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The state trial court found that Meghan was being truthful when she said she could separate in her mind what happened to her sister from the allegations against petitioner and that she had been sincere about her ability to judge petitioner fairly. The court of appeals found that Meghan "said nothing during voir dire that indicated bias." Slip op., Oct. 23,

2008, dkt. #31, exh. L, at 5.

As petitioner points out, some of Meghan's responses to the court and counsel's questions during voir dire were slightly equivocal. In a few instances, she said that she "would hope" that she could set aside her sister's experience when judging petitioner's case. Nonetheless, I am not persuaded that these answers are sufficiently equivocal to call into dispute the trial court's conclusion that Meghan was not biased. Notably, Meghan answered "yes" unequivocally when the trial court asked her whether she could decide the case based on the evidence presented and the legal instructions given, and whether she understood that what happened to her sister was irrelevant. She was candid in her answers and did not express any doubt about her ability to be fair. The trial court had the opportunity to observe Meghan and assess her demeanor, and found nothing in her answers to suggest that she could not decide the case fairly. Granting the state courts the deference due under § 2254(d), I find that they reasonably determined that Meghan was not biased and that they reasonably applied <u>Strickland</u> in rejecting petitioner's claim of ineffective assistance of counsel.

### D. Failure to File a Motion *In Limine* Limiting the Timeframe of the Offenses

Petitioner argues that his lawyer should have filed a motion *in limine* limiting the time frame of the offenses to match what the victim said when interviewed about the assault. He argues that by failing to do so, he was forced to defend himself "for an extra 3 weeks," which made it harder to receive a fair trial. Br. in Supp., dkt. #32, at 20. Petitioner also says he

was prejudiced because he did not have an alibi for May 19-27.

The state court of appeals treated this claim as a due process claim for lack of notice. The court of appeals found petitioner's claim to be frivolous, explaining:

> The complaint and information alleged that Howard committed his crime between February 1, 2005 and March 27, 2005. At the preliminary examination, a videotaped statement of the victim indicated that the assault occurred between February 15, 2005 and March 18, 2005, but nearer to the latter date. Howard contends that the discrepancy deprived him of notice that the court would instruct the jury on the wider time frame. His contention is frivolous. There is no authority for the proposition that the State is confined, at trial, to the evidence it chose to present at the preliminary hearing. Howard had no basis to assume that the allegations in the complaint and information were presumptively amended to conform to the preliminary hearing evidence.

Slip op., dkt. #31, exh. 12, at 3-4.

I agree that it would have been frivolous for petitioner's lawyer to ask that the state be required to restrict its evidence to the dates between February 15 and March 18, 2005. As the Wisconsin Court of Appeals has held, in cases involving child victims, "a more flexible application of notice requirements is required and permitted," because young children do not have the same capacity as adults to comprehend and recall dates and other specifics. State v. Fawcett, 145 Wis. 2d 244, 249-50, 426 N.W. 2d 91, 94 (Wis. Ct. App. 1988). As in the state court, petitioner offers no authority in this court to support the proposition that the state cannot present other evidence besides the child's testimony to establish when the alleged sexual assault occurred. Absent such authority, there is no basis on which to conclude that any motion brought by counsel would have been successful. The fact that petitioner did not have an alibi for a period of time encompassed by the information but beyond the date identified by the victim does not change this fact. Petitioner suffered no

prejudice as a result of his lawyer's failure to bring a motion. This claim must be denied.

E. Failure to Object to State's Motion *In Limine* Regarding Alternate Perpetrator Defense

Before petitioner's trial, the state moved to bar evidence that a convicted sex offender lived very close to the victim. Counsel did not object to the motion, and the court granted it.

The state appellate court found:

> Counsel cannot be faulted for this omission because there were no grounds to oppose the motion. Evidence tending to prove that a party other than the defendant committed the crime can be excluded when there is no other proof directly connecting that person with the offense charged. *State v. Denny*, 120 Wis. 2d 614, 622, 357 N.W. 2d 12 (Ct. App. 1984). Here, there were no facts in the record showing that the third party in question had any direct connection with the crime nor opportunity to commit it. Howard provides no facts, but speculates that the third party could have sneaked into the victim's house while her occasional overnight baby sitter was asleep. That speculation does not provide meritorious grounds for an ineffectiveness claim.

Slip op., Oct. 23, 2008, dkt. # 31, exh. L, at 5-6.

Thus, the state court of appeals implicitly found that petitioner had not been prejudiced by counsel's omission—whether strategic or not—because petitioner had no evidence that would have supported an alternate perpetrator defense. Denny, 120 Wis. 2d at 624, 357 N.W.2d at 17 (alternate-perpetrator defense admissible if defendant can show motive, opportunity and direct connection to crime).

Petitioner argues that the state appellate court erred in concluding that the third party did not have an opportunity to commit the crime. According to petitioner, the third party was not only a convicted sex offender, but he lived a few houses from the victim with

19

Kimberly Russell, a friend of the victim's mother. Russell gave a statement indicating that she babysat for the victim at Russell's house three or four times a month, where she provided constant supervision of the child. State's Mot. in Limine, dkt. #36, exh. U, and Statement of Kim Russell, dkt. #32, exh. U. Petitioner argues that when the victim said she was assaulted "in the basement," she might have meant Russell's basement. This, he argues, is enough to show that the third party had an opportunity to commit the crime and that counsel should have objected to the exclusion of this evidence.

I disagree. When interviewed, the victim stated that the incident had occurred in a downstairs area at her home in Middleton. Even if the third party might have known the victim through Russell, petitioner has submitted no evidence to suggest that Russell babysat for the victim after school during the relevant time period or that the third party was ever alone with the victim in her home or at any other location. Petitioner speculates that the victim "may" have been alone with the third party at some time, but this speculation is of no help to him. Further, the victim expressed no doubt about who committed the crime. Without more evidence, the fact that the third party "might" have had access to the victim at some unknown time was insufficient to permit a third party perpetrator defense. I agree with the state courts that petitioner's lawyer was not ineffective for failing to raise a meritless objection to the exclusion of this evidence. Denny, 120 Wis. 2d at 623, 357 N.W. 2d at 17 ("[E]vidence that simply affords a possible ground of suspicion against another person should not be admissible.").

Even if I disagreed with the state courts' conclusion on this point, petitioner could not

obtain federal habeas relief because the state courts' application of <u>Strickland</u> to these facts was not unreasonable. Fair-minded jurists could disagree whether counsel should have objected to the exclusion of the third party evidence. Certainly, it was "within the range of defensible positions" for the state courts to find that petitioner had not been prejudiced by his lawyer's failure to pursue an alternate perpetrator defense. Accordingly, petitioner is not entitled to a writ of habeas corpus on this ground.

F. <u>Failure to Object to Remarks by Prosecutor During Closing Argument</u>

Petitioner objects to two remarks made by the prosecutor during closing argument. First, he complains that his lawyer should have objected when the prosecutor drew an analogy between the trial judge's giving the victim a piece of candy before she testified and the victim's mother offering the victim a trip to a hotel with a pool if she told who assaulted her. The prosecutor argued that in both situations, the judge and the mother were merely trying to provide comfort to the child, and were not trying to bribe her to provide any specific answer. Petitioner argues that this was an improper way to justify what petitioner insists was the mother's "bribery" of the victim and it invaded the province of the jury by telling it to disregard the mother's bribery attempt when assessing the victim's credibility.

Second, petitioner argues that his lawyer should have objected when the prosecutor paraphrased his denial of the assault as "I didn't do it, no, I never do anything." The prosecutor's statement to which petitioner objects is as follows:

> [Petitioner's lawyer] went through with him a litany of petty criminal convictions, went through with you testimony about where he lived, where he

21

worked, what he did during the day, and then it ends, of course, with the bomb shell, ["]no, I didn't do it, no, I never do anything.["]  Can any of you accept that at face value as the truth?

Petitioner contends that this comment was prejudicial because it suggested to the jury that petitioner always lies.

Defense counsel's decision not to object during the state's closing argument is prejudicial under <u>Strickland</u> only if the prosecutor's comments deprived petitioner of a fair trial.  <u>Hough v. Anderson</u>, 272 F.3d 878, 904 (7th Cir. 2001) (finding that defense counsel's failure to object to improper statements prosecutor made during closing arguments could not be prejudicial when those comments did not violate defendant's right to due process).  In <u>Darden v. Wainwright</u>, 477 U.S. 168 (1986), the Supreme Court established a two-prong test for determining whether a prosecutors' comments in closing argument constitute a denial of due process.  <u>Id</u>. at 181.  First, the court looks to the challenged comments to determine whether they were improper.  If they were, the court must consider a number of factors to determine whether the defendant was prejudiced by the comments.  <u>Ruvalcaba v. Chandler</u>, 416 F.3d 555, 565 (7th Cir. 2005).  Among the factors to be considered are "(1) whether the prosecutor misstated the evidence, (2) whether the remarks implicate specific rights of the accused, (3) whether the defense invited the response,(4) the trial court's instruction, (5) the weight of the evidence against the defendant, and (6) the defendant's opportunity to rebut."  <u>Howard v. Gramley</u>, 225 F.3d 784, 793 (7th Cir. 2000).

The state court of appeals addressed petitioner's challenges to the prosecutor's remarks as follows:

During his [sic] closing, the prosecutor stated her belief that the victim was telling the truth, and argued that the evidence presented at trial established Howard's guilt beyond a reasonable doubt. Howard contends that these were improper comments on evidence and credibility, and counsel should have objected. The prosecutor engages in improper argument by going beyond reasoning from the evidence to a conclusion of guilt and instead suggesting that the jury arrive at a verdict by considering factors other than the evidence. *State v. Draize*, 88 Wis. 2d 445, 454, 276 N.W. 2d 784 (1979). Here, the prosecutor did not ask the jury to consider factors other than the evidence. She merely stated the obvious when she stated that she believed the victim. A prosecutor in a sexual assault case who did not believe that the victim was assaulted, or that the victim correctly identified the defendant, would not prosecute the case, as any reasonable jury would understand. Counsel had no basis for an objection. Nonetheless, even if counsel was deficient in failing to object to the prosecutor's argument, Howard fails to demonstrate any prejudice.

Howard also contends that counsel should have objected when the prosecutor paraphrased his denial of the assault as "I didn't do it, no, I never do anything." Howard contends that this comment was prejudicial, because it suggested to the jury that Howard always lies. The prosecutor was plainly referring to Howard's testimony that he did not assault the victim. It is frivolous to argue that the jury understood the comment in the manner suggested by Howard, or that this comment, even if improper, affected the verdict.

Slip op., Oct. 23, 2008, at 7, dkt. #31, exh. L.

The court of appeals did not specifically mention petitioner's argument about the prosecutor's reference to the judge providing a piece of candy to the victim, so it is difficult to know whether the claim was "adjudicated on the merits" and therefore entitled to deference under § 2254(d). Ashburn v. Korte, 761 F.3d 741, 750 (7th Cir. 2014). But petitioner is not entitled to relief no matter how generous the standard of review. Counsel had no basis to object to the prosecutor's remark. It amounted to an appeal to jurors' common sense, which is not improper. United States v. Alexander, 741 F.3d 866, 871 (7th

Cir. 2014). Further, a prosecutor may properly comment on the credibility of a witness so long as the comment reflects reasonable inferences from the evidence rather than personal opinion. United States v. Nunez, 532 F.3d 645, 654 (7th Cir. 2008); United States v. McKee, 389 F.3d 697, 699 (7th Cir. 2004). In urging the jury to reject petitioner's "bribery" argument, the prosecutor was merely asking the jury to draw reasonable inferences from the evidence and rely on their common sense. Further, because the case was largely a credibility contest, it was not improper for the prosecutor to argue that the state's witnesses were more worthy of belief than petitioner. "[N]o body of law prevents a prosecutor from arguing in favor of a conviction." London v. Clements, 600 F. Appx. 462, 467 (7th Cir. 2015) (nonprecedential disposition) (citing Ellison v. Acevedo, 593 F.3d 625, 638 (7th Cir. 2014); United States v. Auerbach, 913 F.2d 407, 418 (7th Cir. 1990)).

As for the prosecutor's paraphrase of petitioner's testimony, I agree with the state appellate court that the remark was not improper nor prejudicial. Although petitioner characterizes the remark as suggesting that his entire testimony was false, the court of appeals disagreed, finding that the prosecutor was merely referring to petitioner's denial that he committed the assault. I agree with that assessment. Furthermore, I agree that even if the comment were improper, it was not prejudicial. The weight of the evidence against petitioner was substantial. In the face of this evidence, it is inconceivable that any reasonable jury would have acquitted petitioner in the absence of an isolated remark in the prosecutor's closing argument. At the least, it was not "clear error" for the state court of appeals to find that counsel was not ineffective under Strickland for failing to object to this

remark.

## III. DUE PROCESS

Finally, petitioner contends that his right to due process was violated when the state failed to preserve the victim's biological specimens and used the results against him at trial. Although petitioner appears to concede that the state never had possession of the specimens, he argues that the detective who investigated the case had a duty to ask the labs to preserve it. Br. in Supp., dkt. #32, at 35. The state contends that petitioner procedurally defaulted this claim by failing to raise it properly in the state courts.

To protect the primary role of state courts in remedying alleged constitutional errors in state criminal proceedings, federal courts will not review a habeas petition unless the prisoner has fairly presented his claims "throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings." Richardson v. Lemke, 745 F.3d 258, 268 (7th Cir. 2014); 28 U.S.C. § 2254(b)(1). This requirement has two components: (1) the petitioner's claims must be exhausted, meaning that there is no remaining state court with jurisdiction, and (2) the exhaustion must not be attributable to the petitioner's failure to comply with the state court system's procedural rules. Johnson v. Foster, 786 F.3d 501, 505 (7th Cir. 2015). "In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default . . . ." Woodford v. Ngo, 548 U.S. 81, 92 (2006) (internal quotation marks omitted). A federal court may excuse a procedural default

if the habeas petitioner establishes that (1) there was good cause for the default and consequent prejudice, <u>Murray v. Carrier</u>, 477 U.S. 478, 491 (1986), or (2) a fundamental miscarriage of justice would result if the defaulted claim is not heard, <u>Schlup v. Delo</u>, 513 U.S. 298, 315 (1995). The second ground is satisfied only when the claimed constitutional violation probably caused an innocent person to be convicted. <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991).

In its decision summarily rejecting petitioner's appeal from the circuit court's denial of his motion for a new trial based on newly-discovered evidence, the Wisconsin Court of Appeals wrote:

> The crux of Howard's argument in this appeal is that, had Howard known that the victim's biological material was collected, tested and destroyed without ever being in the government's possession, the victim's test results would have been excluded at trial and Howard would not have been convicted. However, Howard does not explain why he did not raise this argument in his May 2009 postconviction motion when he had discovered the facts underlying that argument several months earlier, during proceedings related to Howard's first motion for postconviction DNA testing. *See State v. Escalona–Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994) (when a defendant's claim for relief could have been, but was not, raised in a prior postconviction motion or on direct appeal, the claim is procedurally barred unless the defendant shows a sufficient reason for failing to previously raise it). Moreover, the underlying premise for Howard's current argument—that Howard would not have been convicted had the biological material been excluded—has already been rejected by this court. *See State v. Witkowski*, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991) ("A matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue.").

<u>State v. Howard</u>, No. 2013AP2084-CR, 2015 WL 13122398, at *3 (Wis. Ct. App. Mar. 12, 2015), review denied, 2015 WI 78, 865 N.W.2d 502.

Petitioner concedes that the state court of appeals applied a state court procedural

rule in declining to review his due process claim and that his claim is procedurally defaulted for federal habeas purposes. However, he argues that his default should be excused under the cause and prejudice exception. Petitioner argues that his failure to raise the issue during his direct appeal was caused by the ineffectiveness of his trial lawyer, who would have discovered that the victim's specimen had been destroyed and unavailable for additional testing had he attempted to have the specimen retested. However, this does not explain why *petitioner* did not raise the argument when *he* first discovered it, which he acknowledges was before his filed his May 2009 post conviction motion. Petitioner has failed to show cause for his default.

Petitioner also argues that refusing to hear the merits of this claim would be a "monumental miscarriage of justice" because he did not have the opportunity to test evidence that was used against him. However, the miscarriage-of-justice exception applies only when the claimed constitutional violation caused an innocent person to be convicted, a claim petitioner does not make here. Although petitioner asserts that additional testing of the samples would have been exculpatory, he offers nothing to support that assertion. Furthermore, as the state court of appeals found, the medical evidence was not necessary to convict petitioner. The testimony of the victim, her videotaped statement and the evidence showing that petitioner was sometimes alone with her child and her siblings were sufficient to support the conviction.

## IV. CERTIFICATE OF APPEALABILITY

The court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree with, this court's resolution of this case. Resendez v. Knight, 653 F.3d 445, 446-47 (7th Cir. 2011) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000); Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Several of petitioner's claims have no merit. Of those that are colorable, reasonable jurists would not disagree that the state court reasonably adjudicated those claims and that therefore habeas relief is foreclosed under § 2254(d). Nor would reasonable jurists disagree that petitioner's due process claim is procedurally defaulted.


## ORDER

IT IS ORDERED that

(1) Albert Howard's petition for a writ of habeas corpus is DENIED.

(2) Petitioner is DENIED a certificate of appealability. If petitioner wishes, he may seek a certificate from the court of appeals under Fed. R. App. 22.

Entered this 1st day of June, 2017.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge